NEW JERSEY WIRE CLOTH CO. v. BUFFALO EXPANDED METAL CO. et al.

(Circuit Court, W. D. New York. June 28, 1904.)

No. 16.

**1. PATENT—INFRINGEMENT—FIREPROOF FLOOR CONSTRUCTION.**

The Orr patent, No. 471,772, for a fireproof floor and ceiling construction, is entitled to a narrow construction, only, in view of the prior art, limiting it to the precise structure shown. As so construed, it is not infringed by the construction shown in the Golding patent, No. 529,724.

**2. SAME—EVIDENCE TO NEGATIVE INFRINGEMENT—PROCEEDINGS IN PATENT OFFICE.**

The fact that an application for a patent was considered in the Patent Office in connection with a prior patent, and several claims rejected thereon, creates an unusually strong presumption that the structure of the patent as granted is substantially different from the earlier patent.

In Equity. Suit for infringement of letters patent No. 471,772, for a fireproof construction, granted to William Orr March 29, 1892. On final hearing.

Phillip, Sawyer, Rice & Kennedy and Tracy C. Becker, for complainant.

John E. Brandegee, Geo. Quintard Horwitz, and Ernest Howard Hunter, for defendants.

HAZEL, District Judge. This is a bill in equity to restrain infringement of United States letters patent No. 471,772, granted to William Orr March 29, 1892, and assigned to complainant, for improvement in fireproof construction. The application was filed April 13, 1891. Its object is "to provide an improved floor and ceiling construction which shall avoid the use of these brick arches and similar constructions, thus reducing the weight of the structure, while at the same time all the fireproof qualities of the brick and tile construction are retained." The specification describes a fireproof floor and ceiling construction consisting of a number of light metal bars or suspenders, placed in series between the floor beams, and transversely thereto. The iron bars are styled "suspenders" in the patent, and they will be so styled in this opinion. The suspenders vary in width according to the strength of the floor desired. They are supported at the ends by the floor beams, but do not perform any like functions. When the suspenders are firmly attached in series to the top of the beams, a suitable portion of concrete of unequal depth is placed upon them. Concrete ribs are formed in-

series which create and inclose air spaces extending from beam to beam. The concrete web also extends from beam to beam, and is integral therewith. The union of the floor beams and the suspenders with a portion of concrete or plastic material forming a web, and a series of horizontal ribs or arches between the beams, supported by the suspenders, produces a light, though strong and compact, fireproof floor construction. To emphasize the importance of the functions of the suspenders, the following is quoted from the specification:

"The suspenders may be very light, but they must be of sufficient width to give the cement rib resting thereon sufficient area, so that the crushing strength of the cement will about equal the tensile strength of the bar, and both the bar and cement rib must have sufficient strength to support with a sufficient factor of safety the load required."

Different forms of suspenders, dependent upon the character of building and weight of floor desired, may be used. For example, in residences where light floors are practicable, the concrete web is thinner, and the suspender comparatively lighter, than in buildings where the floors are designed to support great weights. In the latter case the cement web is thicker or more substantial, the ribs closer, and the suspender heavier and stronger. To provide suitable floors for different constructions, as already indicated, modified forms are clearly pointed out in the patent and accompanying drawings. The preferred form of structure shows the suspenders firmly hooked over the top flanges of the floor beams, extending downward very close to the side of the beams, and then horizontally across from beam to beam on a level with their lower side. Other constructions referred to in the specification show a horizontal suspender bent at its ends to rest flatly upon the lower flanges of the beams, and in another form (Fig. 10) an arch-shaped suspender is employed. The ends of the arched suspender do not rest on the flanges of the beams, but are connected with a horizontal part, B, of the suspender, in such a way as to prevent straining. Five claims, viz., the first, third, fifth, sixth, and ninth, are alleged to be infringed by the defendant. The first claim broadly covers the combination in these words:

"(1) The combination with floor beams, or a series of suspenders supported by said beams, and extending from beam to beam, and a body of cement or other plastic material forming a web and a series of ribs extending from beam to beam, said web lying above said suspenders, and the ribs extending downward from said web, and being supported by the suspenders, substantially as described."

The others differ from the first only in the following particulars: Claim 3 embraces a "woven wire or perforated sheet metal extending from beam to beam, and forming a bond" with the concrete. Claim 5 has the additional feature of "a ceiling of metallic lathing," which is supported by the beams. Claim 6 includes the words "arched suspenders." Claim 9 is fairly representative of the first. It describes a fireproof floor construction supported by the suspenders, having air spaces extending from beam to beam between adjacent suspenders. It is contended by the complainant that the claims are not specifically limited, and hence they should be given a liberal construction, in accordance with the reasonable import of the patent. Stress is placed upon the slender concrete surface of the structure, in connection with its great

strength, which, according to the complainant's proof, is owing to the fact that the suspenders afford support to the floor and ribs, and therefore have a tendency to resist the downward thrust of the weight above. Accordingly a strong floor is provided, the supporting structure itself being light. The complainant further contends that a fireproof floor such as described in the patent may be more quickly constructed, and at less expense, than the tile floors mentioned in the specification. The proofs of the defendant go to the validity of the patent in view of the prior art. Infringement is denied. An examination of the record shows that the patent must be restricted to the precise structure shown. The defendant's structure appears to be functionally different, in that the thrust from weight upon the floor is not downward, and rather tends to a lateral strain upon the lower flanges of the beams. The specification of the patent in suit, after in detail describing the structure, says:

"The floor load is lessened to one-half that of brick-arch floors, and the side thrust against the beams in the ordinary brick or tile arch construction is converted into very nearly a dead weight upon the beams."

It evidently was the intention of the patentee to construct suspenders which would support the entire load without straining the beams or exerting great pressure upon them. The conformation of the suspenders employed in the different forms of construction described in the specification negatives any other intention. Figure 9 of the drawings does not change this view, for the reason that the structures shown in Figures 10 to 13 of the patent would seem to emphasize the point that the weight is supported by the suspender, and that, when an arched suspender is employed, the structures shown by Figures 10 to 13 are preferred, to secure the desired result. The arched suspenders described in the specification are certainly so constructed that the load upon them, as already suggested, is in a very large measure borne by the suspenders, and not by the beams. The expert witnesses do not agree as to the asserted disclosures of the prior art, nor as to the scope of the patent in suit.

Inasmuch as the court is of the opinion that the scope of the patent is narrow and circumscribed, it is thought unnecessary that the validity of the patent be passed upon. The state of the art shows that it was not new to make fireproof floors, with arches of metal resting upon the flanges of iron beams. Such arches are found in the patents of Gilbert, No. 64,659, dated May 14, 1876; Snead, No. 91,375, dated June 15, 1869; Cheney, No. 137,345, dated April 1, 1873; Hoyt, No. 162,822, dated May 4, 1875; Hoyt, No. 172,470, dated February 15, 1876. The object of the invention of some of the patents cited to anticipate complainant's patent was to construct a light and strong, as well as economical, fireproof floor. It appears further that to use a sheet of woven wire or perforated metal in the manner set out in claim 3 of the patent in suit was also known to the art. On this point reference is made to the Hayes British patent of 1889. There "a sheet-metal lathing, formed with upturned flanges * * * curving over the flanges of the beam," is a marked feature of the invention. Moreover, the feature, as shown, was already patented by the same patentee. In his patent in 1890 a metallic lathing is shown, extending from beam to beam, se-

cured at the ends to the metal of the flanges. Reference is also made to the patents of Cheney, Jackson (1876), of Hoyt, and of Hayes, as showing a metallic lathing, and the cement supported by the suspenders on metal frames. In the Cheney patent, to which reference has been made, a metallic lathing is fastened to the suspender in substantially the same way as in the patent in suit. Defendant's best reference would seem to be the patents of Jameton, No. 361,361, April 19, 1887; Bruner, No. 356,704, January 25, 1887; and Hayes, 1889, British patent. The Jameton patent shows a series of suspenders, called "hooks" in the specification, which, in appearance, conform quite closely to the suspenders of complainant's structure. There the concrete is supported by the hooks and by longitudinal bars. The bars which are not essential to the support of the concrete rest on suspenders extending to the top of the flanges of the beams where they are fastened. The specification in the Jameton patent states that the bars are preferably used to better hold the material in position. To lighten the floor, the fireproof material does not extend to the level of the top of the beams, as in complainant's structure. The principal feature of difference between the Jameton patent and the patent in suit is that in the latter the upper surface of the concrete extends to the level of the beams, and dead-air spaces adjacent to the beams are provided. The Bruner patent describes a fireproof floor without metal suspenders. It shows a concrete web and series of concrete arches extending across from beam to beam. Though the above citations do not disclose the precise combination of the complainant, yet it is thought that enough similarity appears to deprive the patent in suit of liberal construction. Nothing is shown entitling the improvement to be classified as an invention of such merit as led from failure to success. Neither can it be correctly contended that the novelty of the patent is demonstrated by its general usefulness to the public, or that it was accepted by the skilled artisan as an invention which advanced the state of the art. The rule invoked by the complainant is to the effect that, even though the invention is not entitled to a broad construction, the patent nevertheless must be construed with such liberality as will preserve to the inventor what he has actually accomplished. Notwithstanding this rule, I am of opinion that whatever novelty is in the Orr patent is limited by the prior art. It is sufficiently shown that the principal elements upon which patentability depends were familiar to those practicing the art.

Is the defendant an infringer of the involved claims? The Golding patent, No. 529,724, dated November 27, 1894, under which the defendant's structure is made, understandingly describes the method of constructing fireproof floors and ceilings. It cannot be successfully disputed that prima facie the grant of the Golding patent negatives infringement. Putnam et al. v. Keystone Bottle Stopper Co. (C. C.) 38 Fed. 235; Boyden Power Brake Co. v. Westinghouse Air Brake Co., 70 Fed. 816, 17 C. C. A. 430. An unusually strong presumption that there is substantial difference between the patent in suit and the Golding patent arises from the fact that the file wrapper of the latter shows that the application, when filed, was considered in connection with the patent in suit. Several claims were rejected on Orr. The patent was finally granted upon a palpably narrow claim "for a curved channel

iron resting at its ends upon the flanges of the beams." Apparently, then, the allowance of the claim by the Patent Office was owing to the recognized distinction between the suspender of the defendant's patent and the channel bars of Golding. This conclusion of the Patent Office is entitled to weight, and has not been overcome by complainant's showing. The method of construction adopted by Golding is correctly stated in defendant's brief as follows:

"Arched channel irons are placed at intervals apart transversely between the I beams, with their ends resting on the inner lower flanges. On each side of these channel irons is placed an upright molding board. These boards are marked 'C' in Figs. 3 and 4 of the Golding patent. Between their upper edges is placed a temporary horizontal flooring or centering, over which is laid a sheet of expanded metal, which is a well-known form of metallic lathing. Concrete is then laid on the horizontal boards, or centering over the expanded metal, and is forced into the spaces between the vertical boards and above the channel irons. After the concrete has hardened or become set, the flooring and molding boards are removed, leaving an upper layer or web of concrete, with a sheet of expanded metal embedded in it, and a series of arched portions of concrete carried by the arched channel irons."

The defendant's device tends to establish that none of the disputed claims are infringed. The Golding patent, according to defendant's expert witness Hunter, has no ribs extending from beam to beam, nor suspenders, nor dead-air spaces. Regarding the use of channel irons, Mr. Hunter testifies as follows:

"The channel irons act as struts abutted against the lower portion of the floor beams, and produce an outward thrust, whereas the suspenders do not produce an outward thrust, but, instead, create a dead downward load upon the floor beams."

This view would seem to be corroborative of the object of complainant's patent. The function of the channel irons employed by the defendant is thought to be substantially different from complainant's suspenders. The combination of the Orr patent, No. 471,772, or its equivalent, is not found in the defendant's structure, and therefore the defendant's structure does not infringe it.

The bill is dismissed, with costs.