### MacCLEMMY v. GILBERT CORSET CO.

(District Court, D. Connecticut. February 15, 1915.)

#### No. 1378.

1. PATENTS ⬦112—VALIDITY—PRESUMPTION FROM ACTION OF PATENT OFFICE.
   The fact that the nearest references in the prior art cited as anticipations in a suit for infringement were considered by the Patent Office before the patent was granted raises a strong presumption that the claims of the patent in suit as allowed are valid.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec. Dig. ⬦112.]

2. PATENTS ⬦328—VALIDITY AND INFRINGEMENT—BODY BRACE.
   The MacClemmy patents, No. 948,233, for a body brace, and No. 948,234, for an improvement thereon, held not anticipated and valid, and claims 1, 2 and 5 of the former and 4 and 7 of the latter held infringed.

In Equity. Suit by Robert F. MacClemmy against the Gilbert Corset Company. On final hearing. Decree for complainant.

Clair W. Fairbank, of New York City, and Samuel E. Hoyt, of New Haven, Conn., for plaintiff.

Samuel H. Fisher and Henry E. Rockwell, both of New Haven, Conn., for defendant.

THOMAS, District Judge. On February 1, 1910, the United States Patent Office issued to Robert F. MacClemmy two patents, numbered

948,233 and 948,234, respecting improvements in body braces. The particular claims in controversy are 1, 2, and 5 of patent No. 948,233 and 4 and 7 of patent No. 948,234.

A stipulation filed at the trial admits that the plaintiff is the owner of said letters patent, that the Gilbert brace, concerning which the plaintiff makes complaint, was made by the defendant and sold by it from its factory in this district before the filing of the bill of complaint and subsequent to. the date of issue of the patents in suit, and that the defendant at one time manufactured for the plaintiff braces substantially identical with the Imperial Health brace which the plaintiff is now manufacturing for himself.

The parties seem to agree that prior to 1908 the plaintiff had been connected with another concern, was engaged in the sale of shoulder braces, and that his duties were such that he came in direct contact with the purchasers of those shoulder braces, and thus learned of certain alleged defects of which the customers complained, and of the objections which they made to them.

Upon terminating his relationship with that concern, the plaintiff made a sample shoulder brace designed to eliminate the defects of which the ultimate purchasers complained, and endeavored to get some corset manufacturer to take up for him the manufacture of the shoulder brace as he had improved it. In connection with this undertaking it happened that he met Mr. Bowers, the treasurer and manager of the defendant company, which concern was not then engaged in this line of work, and an agreement was entered into as a result of which the defendant, or rather its predecessor in business, began the manufacture of the improved shoulder braces for the plaintiff. MacClemmy then went on the road soliciting orders and demonstrating the article. This arrangement seems to have continued satisfactorily to both parties until early in the year 1913, when the agreement was terminated and MacClemmy started a factory of his own for the manufacture of his Imperial Health braces. Shortly thereafter the defendant began making and selling the Gilbert brace, of which the plaintiff complains, and which is the cause of this suit.

The defendant insists that the claims sued on are either invalid, or, if valid, are not infringed, by the Gilbert brace. The plaintiff insists that the patents are not only valid and infringed, but that the defendant is estopped to deny their validity by reason of the prior relationship which existed between the parties, and by reason of a letter written by the defendant on May 6, 1910, in response to an inquiry from a third party, which letter reads as follows:

"New Haven, Conn.,-May 6, 1910.

"Mr. E. R. Bilz, Room No. 610, No. 1416 Broadway, New York City—Dear Sir: Your favor of the 5th at hand relative to the shoulder braces. We do not manufacture shoulder braces for our own trade or sale, but make them exclusively for the Imperial Health Brace Co., of this city, to whom we are giving your letter, and you will probably receive from them an answer shortly. This brace of theirs is a patented article, on which they have spent considerable time and money to perfect, and there is nothing on the market equal to it.

"Yours very truly,                          The Gilbert Corset Co."

Whether or not this letter, written while the defendant was presumably profiting by its agreement or license under the patents in suit, constitutes an absolute estoppel to its later denial of the validity of the patents, is a question which, as I view the matter, need not be decided.

The patentee, in the first patent, No. 948,233, said:

"This invention relates to certain improvements in shoulder braces, and more particularly to that type of shoulder brace in which there are two back sections, each having an arm-hole therein, lacing or cords connecting the sections together, and belt sections connected to the ends of the cords and buckling together in front to adjust the back sections in respect to each other."

In his patent he further described what he admitted to be old, and referred to one objection thereto, as follows:

"Braces have been formed in which the part corresponding to my shoulder strap-forming section 15 is extended forwardly and downwardly and adapted to be buckled to the body portion beneath the arm, but fabric cannot be cut so that the front portion of the shoulder strap will fit the body equally well at both edges thereof, and the shoulder strap will tend to cut into the flesh and become very uncomfortable.    *    *    *"

Plaintiff's improvements over this are defined in the following claims, which, as well as claims 4 and 7 of the second patent, are the subject of this suit:

"1. A body brace, comprising a back formed of two sections each formed with an arm-hole therein, the portions in front of said arm-holes being integral with the back sections and uniting therewith beneath the arm-pits, and the portions above the shoulders being formed integral with the back sections and united with the portions in front of the shoulders at seams extending over the tops of the shoulders, the meeting ends of the portions being of substantially the same width, separate reinforcing straps extending along each of said seams and serving to hold the fabric smooth along the tops of the shoulders, and to prevent it from buckling or wrinkling, a lacing connecting said sections, and belt sections connected to said lacing and adapted to be secured together in front of the body.

"2. A body brace, comprising a back portion formed of two sections each formed with an arm-hole therein, the portions in front of said arm-holes being integral with the back sections and united therewith beneath the arm-pits, and the portions above the shoulders being formed integral with the back sections and united with the portions in front of the shoulders by seams extending along the tops of the shoulders, reinforcing layers secured to the portions in front of the shoulders, a layer of stiffening padding between said reinforcing layers and the adjacent portions, and a plurality of transverse seams extending across said reinforcing layers and the padding, and serving to retain the portions in front of the shoulders substantially stiff and prevent them from buckling or wrinkling, lacing connecting said back sections, and belt sections connected to said lacing, adapted to be secured together in front of the body.

"5. A body brace, comprising a back portion formed of two sections each formed with an arm-hole therein, the portion in front of said arm-hole having reinforcing layers secured thereto, a layer of stiffening padding between said reinforcing layers and the adjacent portion, a plurality of transverse seams extending across said reinforcing layers and padding and serving to retain the layers in front of the shoulders substantially stiff and flat and prevent them from buckling or wrinkling, lacings connecting said back sections, and belt sections connected to said lacings and adapted to be secured together in front of the body."

The second patent, No. 948,234, described certain improvements on the garment shown in the first patent, and these improvements are defined, in the two claims sued upon, as follows:

"4. A body brace, comprising two back sections, reinforced stays extending along the rear edges of said sections, lacing connecting said stays, belt sections connected to said lacing and adapted to extend around the waist of the wearer, and strips of tape secured to said back sections along their lower edges and spaced therefrom throughout a portion of their length to leave passages through which said belt sections extend."

"7. A body brace having an inelastic back portion, reinforcing stays extending substantially vertically and each having one edge secured to said back portion, the lower ends of said stays being overlapped and secured to said back portion, and the upper ends of said stays being normally spaced apart, a binding extending across the lower ends of said overlapped stays and the lower edge of said back portion, a lacing connecting said stays, and belt sections connected to said lacing."

The defense of invalidity of both of these patents rests upon what is shown in the Munter Nulife brace and the following United States letters patent:

| | | | | | | |
|---|---|---|---|---|---|---|
| No. | 98,564, | to | Conklin, | dated | January 4, 1870; |
| " | 151,902, | " | Morse, | " | June 9, 1874; |
| " | 433,095, | " | Reast, | " | July 29, 1890; |
| " | 472,086, | " | Town, | " | April 5, 1892; |
| " | 541,681, | " | Putz, | " | June 25, 1895; |
| " | 622,381, | " | Murdock, | " | April 4, 1899; |
| " | 639,446, | " | Scott, | " | December 19, 1899; |
| " | 732,591, | " | Schufflay, | " | June 30, 1903; |
| " | 811,428, | " | Munter, | " | January 30, 1906; |
| " | 883,101, | " | Eisen, | " | March 24, 1908; |
| " | 903,073, | " | Ferris, | " | November 3, 1908; |
| " | 906,196, | " | Burnstein, | " | December 8, 1908. |

[1] Not only the Munter brace, but the patents to Town, Scott, Munter, Eisen, Schufflay, and Morse, were considered by the Patent Office during the proceedings which led up to the granting of the two patents in suit. The fact that the Patent Office allowed the patents in suit after considering the prior patents mentioned above, and the prior Munter garment, raises a strong presumption that the claims as allowed are valid. Hale & Kilburn Mfg. Co. v. Oneonta C. & R. S. Ry. Co. (C. C.) 129 Fed. 598; New Jersey Wire Cloth Co. v. Buffalo Expanded Metal Co. (C. C.) 131 Fed. 265, affirmed 135 Fed. 1021; American Caramel Co. v. Glen Rock Stamping Co. (D. C.) 201 Fed. 363.

[2] I do not find that any of the prior patents to which reference has been made approach the construction claimed in the first patent any more closely than does the Munter brace; but, as I have previously noted, both the Munter patent and the Munter brace were considered by the Patent Office examiner in connection with the first MacClemmy patent before he allowed the latter.

The similarity between the plaintiff's and defendant's shoulder braces, and the difference between these and the Munter brace, is set forth by the plaintiff's expert, as follows:

"The essential similarity between the plaintiff's and defendant's braces, and the point of primary novelty, as I understand it, over the prior art, is the construction wherein the arm-hole encircling portion is formed of two pieces, one projecting from and substantially integral with the upper part of the back, and passing upward over the shoulder, and the other projecting from and substantially integral with the back section below the arm and extending upward in front; these two sections being united at the top over the shoulder by a transverse stiffening seam. The essential difference be-

tween these two braces, on the one hand, and the Munter brace, on the other hand, is that Munter formed his arm-hole of a piece of the back section which was carried up over the shoulder, and thence down in front and united at the bottom, there being no reinforced seam at the top. In other words, the essential difference is that both the plaintiff and defendant interrupted the continuity of the arm-hole strap at the top over the shoulder, and at this point introduced a seam so constructed that it forms a transverse reinforcement, whereas in Munter the arm-hole strap is continuous with the back at the upper end and continues over the shoulder, and there is no seam until we reach the bottom."

Most of these patents referred to, other than Munter, disclose shoulder braces of the type to which plaintiff's braces relate, and have either an elastic strip or an adjusting buckle, or lacing, to permit the arm-hole to be enlarged or reduced, or to allow the garment to be adjusted to fit the person. The plaintiff, in his patent, so designs the parts that no adjustment is either necessary or desirable and yet the proper fit is secured to any person. Munter has no adjustment of the size of the arm-hole, but his construction is quite different, as pointed out in the above-quoted portion of the testimony of plaintiff's expert, and superior advantages are claimed for the plaintiff's device by reason of these differences. The very fact that the defendant has seen fit to copy this arrangement tends to corroborate the plaintiff's testimony and the statements in his patent as to the advantages secured thereby. It is apparent that the general type to which plaintiff's inventions relate is one upon which a large number of people have endeavored to improve, and for which improvements a large number of patents have been granted. I note that one patent for a construction of this same general type was granted as far back as 1874. Neither this patent to Morse, No. 151,902, nor any of the other patents granted prior to the date of the MacClemmy applications, appear to show or suggest the feature referred to by plaintiff's expert as the point of primary novelty.

The main features of the second patent in suit are the overlapping of the stays to prevent the latter from folding inwardly or outwardly to produce ridges, and the provision of tapes or guides to keep the two separate belt sections from becoming entangled with the lacing to which they are connected. I do not find these features in any of the prior constructions of the same type, and I do not believe that any of the patents for garments of entirely different types would suggest the use of these features in a shoulder brace, or suggest the advantages which the patentee has secured by using them in a shoulder brace.

I find that the situation here involved is somewhat similar to that considered by the Court of Appeals for the Second Circuit in the case of David v. Harris, 206 Fed. 902, 124 C. C. A. 477, where another garment patent was under consideration. In that case the court said:

"The patented feature is an exceedingly simple device, but it involves considerable ingenuity, and is evidently popular with the trade and with buyers. It is not found in the prior art. Somewhat similar attempts were made in coats and shirts, but we cannot find that the idea had occurred to any one, prior to Weinschenk, to convert a sweater into a garment capable of two such uses accomplished by such easy transformation.

"The fact that the defendant is making his sweaters under a subsequent patent to Rautenberg makes the defense of lack of novelty and invention

come with rather poor grace from one who is asserting that even after the complainants' patent there was still room for invention.  *  *  *

"The questions whether the patented sweater involves invention and whether the claims are infringed are not entirely free from doubt upon the proof, but we are inclined to answer them in favor of the complainants, first, because of the presumption arising from the grant of the patent; second, because the prior art shows many attempts to accomplish the same result without success; and, third, because it seems quite inconsistent for one who is operating under the Rautenberg patent to deny patentability to the Weinschenk sweater. Regarding infringement, the only difference between the two structures has been pointed out, and, if the complainants are entitled to invoke the doctrine of equivalents at all, the claims of their patent must cover the slight change in the location of the lapels introduced by the defendant."

In the present case the defendant, or at least Mr. Bowers, of the defendant company, has a patent, No. 1,093,379, granted since the patents in suit, which shows what appears to be the identical construction employed by the defendant.

The decision of the Court of Appeals of this Circuit in Good Form Mfg. Co. v. White, 160 Fed. 661, 87 C. C. A. 549, also related to a garment patent which was held valid and infringed. Many of the statements in that opinion appear to be particularly applicable to the present case.

At the trial certain evidence was introduced in an effort to show that some employés of the defendant suggested certain of the features shown and claimed in the patents. I do not find that such facts have been established. The evidence does not show the time when such employés made their suggestions, or that any of their suggestions were made before the date of the filing of the application which resulted in the patents in suit, or that any such suggestions were made by the employés to the plaintiff, or that knowledge of the suggestions came to him. Even though the defendant had succeeded in proving its contentions on these points, nevertheless, as their work was merely that of skilled workmen, operating under the direction of Mr. MacClemmy, he would still have the right to claim the resulting product as his sole invention, and he does not lose such right because he lacks the mechanical skill to embody his invention in an artistically cut and sewed garment.

I have carefully considered all of the defenses advanced by the defendant, but none of them convinces me that the patents are not valid, and the claims in controversy are entitled to such an interpretation as renders them infringed by the defendant's device. Therefore the five claims of the two patents in suit are held to be valid and infringed.

A decree in the usual form, for an injunction and an accounting, may be entered, with costs to the plaintiff.