SMOKADOR MFG. CO., Inc., v. TUBULAR PRODUCTS CO.

District Court, D. Connecticut. July 18, 1928.

No. 1938.

1. Patents ⟾165(4)—Limitation should not be read into claims, unless necessary to distinguish claims from prior art.

Limitation should not be read into claims of patent, except where such narrow interpretation is necessary to distinguish it from prior art.

2. Patents ⟾112(3)—Presumption of validity arising from grant of patent is strengthened, where relevant prior art was considered and disregarded by Patent Office.

Where the most relevant prior art was considered by the Patent Office and disregarded, presumption of validity arising from grant of patent is considerably strengthened.

3. Patents ⟾112(1)—Proceeding in Patent Office is not binding on defendant in subsequent infringement suit.

Patent Office proceeding, being ex parte, is not binding on defendant in subsequent infringement suit, and it is entitled to opinion of court on question of validity.

4. Patents ⟾16—Patent without element of invention must be held invalid, no matter how novel or useful it may be.

In absence of element of invention, patent, if issued, must be held invalid, no matter how novel or useful it may be; it being necessary

that the designer exhibit some degree of skill or ingenuity in contriving something new, which surpasses a showing of mechanical skill.

5. **Patents ⬲328—1,646,086, claims 1 to 6, relating to ash stands, held invalid for lack of invention.**

Fleming patent, No. 1,646,086, claims 1 to 6, relating to ash stands, in particular the type of stand that is supported on floor, with the ash tray elevated to point within convenient reach of user, *held* invalid for lack of invention.

6. **Patents ⬲129(1)—Defendant was not estopped to deny validity of patent because of preparing similar applications after issuance of patent.**

Defendant in patent infringement suit, after issuance of patent, causing applications to be prepared relating to similar devices, was not thereby estopped from denying validity of patent.

7. **Trade-marks and trade-names and unfair competition ⬲3(4½), 93(3)—Slogan "Ashless Ashstand," in connection with trade-mark "Ashagon," held not unfair competition with owner of trade-mark "Smokador," using same slogan, in view of evidence; such phrase being descriptive and not susceptible of technical trade-mark appropriation.**

Use of slogan "Ashless Ashstand," in connection with trade-mark "Ashagon," in describing ash stand, *held* not, in view of evidence failing to establish that use thereof was likely to cause confusion with trade-mark "Smokador," using the same slogan, to constitute unfair competition; the phrase being descriptive, and not susceptible of technical trade-mark appropriation.

8. **Trade-marks and trade-names and unfair competition ⬲68(1)—"Unfair competition" requires that deception be natural and probable result of defendant's acts.**

"Unfair competition" is ordinarily found only where defendant is palming off its goods as plaintiff's, and requires that deception be natural and probable result of defendant's acts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

In Equity. Suit by the Smokador Manufacturing Company, Inc., against the Tubular Products Company. Decree of dismissal.

Robert C. Mitchell and George H. Mitchell, both of New York City, and Joseph K. Schofield, of Hartford, Conn., for plaintiff.

George F. Scull, of New York City, for defendant.

THOMAS, District Judge. This is the usual patent suit, brought by the plaintiff, a corporation organized under the laws of Delaware, against the defendant, an Ohio corporation, for infringement of letters patent No. 1,646,086, issued to Robert G. Fleming, assignor to plaintiff. The patent in suit is-

sued October 18, 1927, on an application filed December 22, 1926. Claims 1 to 6, inclusive, are in issue. In addition to the suit for patent infringement, plaintiff alleges infringement of a common-law trade-mark "Ashless Ashstand," and unfair competition by defendant in the use of said trade-mark.

The patent in suit relates to ash stands and particularly to that type of stand that is supported upon the floor, with the ash tray elevated to a point within convenient reach of the user. The stand is so constructed that ashes, burnt matches, butts, and similar waste received by the tray will fall into a waste-receiving receptacle in the base of the stand, to be there accumulated and retained in a sanitary manner, without contaminating the surrounding air with objectionable odors.

Claim 4 may be taken as typical. It reads as follows:

"4. In a device of the character described, an ash-receiving tray having a waste discharge outlet in the lower part thereof, a relatively long waste-conducting conduit depending therefrom, a one-piece skirt adjacent the lower end of said conduit, forming a relatively enlarged cavity for wholly receiving within the same a waste-receiving receptacle insertible through the lower end of said skirt, and means within said cavity for detachably holding a waste-receiving receptacle therein in position to receive waste falling through said conduit."

The defendant admits infringement of each of the claims in suit, but denies that its device is either a slavish or Chinese copy of plaintiff's article. The sole question, therefore, is whether the patent is valid, and the defendant relies upon invalidity as its sole defense.

Ash stands of the general type shown in the patent in suit have been known in the art for many years. Of the many prior art patents offered by the defendant to show the state of the art, three, at least, show ash stands generally similar to that described in the patent in suit. Patent No. 1,237,014, issued August 14, 1917, to Botty and Prior, patent No. 1,364,892, issued January 11, 1921, to Schulte and Weite, and patent No. 1,559,234, issued to Fleming, the patentee of the patent in suit, each show a stand comprising an ash tray having a waste discharge outlet in the lower part, a relatively long waste-conducting conduit depending therefrom, and a waste-receiving receptacle formed in the base of the stand. In each of these prior patents, and in the patent in suit as well, the ash-receiving tray and the waste-

conducting conduit are so similar as to be considered substantially identical. Differences, if any, in the devices, must reside in the construction of the waste-receiving receptacle, the means employed in attaching it to the waste-conducting conduit, and the method of supporting the ash tray as a unit.

Botty and Prior show as a waste-receiving receptacle a removable drawer located in the base of the stand. Their stand is supported by a metal skirt having a heavy bottom plate, in order to give stability. Schulte and Weite show as a waste-receiving receptacle a chamber integral with the base of their stand. The waste is removed by opening a shutter in the base of the stand, which is supported upon four feet, so that the base of the stand may be sufficiently elevated to permit the shutter to properly function. In Fleming's earlier device, the waste-receiving receptacle is the base of the stand, which is removably attached to the conduit. This base is weighted to give stability; the weighted base forming the support for the stand as a unit.

In the patent in suit, the stand is supported by a metal skirt at the bottom and attached to the waste-conducting conduit at or near its lower end. This skirt, in addition to its supporting function, acts as protection for the waste-receiving receptacle, which is removably attached to the lower end of the conduit, and which may be easily removed through the opening in the skirt and then cleaned.

[1] The advantages claimed by the patentee for his new construction are reduction of the number of parts necessary to a complete stand and ease in removing and attaching the waste-receiving receptacle. An obvious advantage arising from the adoption of the protecting skirt support is that a glass receptacle may be employed. The patentee suggests the use of a standard glass fruit jar, which may be readily replaced, if broken. If a glass receptacle is used, the necessity for removal of the waste may be determined upon inspection, without the removal of the receptacle. Glass also has some considerable advantage over the use of metal in the ease with which it may be cleaned. None of the claims of the patent in suit is limited to a glass receptacle, nor, in fact, to a receptacle of any material, and this limitation should not be read into the claims, except where such narrow interpretation is necessary to distinguish the claims from the prior art. International Banding Machine Co. v. American Bander Co. (C. C. A.) 9 F.(2d) 606.

Defendant has offered no single prior patent as an anticipation. The defense of invalidity is based upon the contention that, in view of the prior art, the Fleming disclosure amounts to nothing more than a mere mechanical improvement, void of that spark of genius found in true inventions.

In addition to the patents to Botty, Schulte, and Fleming, referred to supra, defendant has introduced a number of patents from remote arts, particularly the lamp and oil stove arts, to show that skirt supports were old generally in many arts, and that the skirt, in addition to its supporting function, protected inclosed vessels. I do not consider these patents particularly relevant to the question here to be determined, primarily because both the Botty patent and the patent to Gardner, No. 185,439, issued December 19, 1876, for a cuspidor, in a closely analogous art, show skirts. Botty's skirt is used for support, and Gardner's for protection.

Defendant has also introduced a few patents showing types of ash-receiving receptacles used in connection with tables, armchairs, and automobile dashboards. While these patents show various types of removably attached waste-receiving receptacles, they are not, in my opinion, as close to the disclosure of the patent in suit as the patents to Botty, Schulte, Gardner, and Fleming, No. 1,559,234. I am satisfied that the question of validity must be determined primarily upon the advance made by the patent in suit over the devices of the four patents just mentioned.

[2, 3] During the pendency of the application for the patent in suit, the claims as originally filed were rejected, and the Examiner cited, among others, the patents to Botty, Schulte, and Fleming, No. 1,559,234. After written argument, the rejection was reconsidered and withdrawn, and the claims in suit were passed to issue as originally filed, with the exception of claim 1, to which was added a relatively unimportant limitation. It thus appears that the most relevant prior art was considered by the Patent Office and disregarded. Under these circumstances, the presumption of validity arising from the grant of the patent is considerably strengthened. MacClemmy v. Gilbert Corset Co. (D. C.) 221 F. 73. However, the Patent Office proceeding is ex parte, and not binding on this defendant, and it is entitled to the independent opinion of this court upon the question of validity. Respecting this rule Mr. Justice White, speaking for the Supreme Court in Palmer v. Corning, 156 U. S. 342, 15 S. Ct. 381, 39 L. Ed. 445, where it was held that the patent there in suit was invalid because no invention was involved, said:

"There is no doubt that, in this as in all similar cases, the letters patent are prima facie evidence that the device was patentable. Still, we are always required, with this presumption in mind, to examine the question of invention vel non upon its merits in each particular case."

All the evidence and all the references were not before the examiner as they now appear before the court. The defendant has made a different record here, and upon this record, and not upon the one before the examiner, must judgment be rendered.

[4] Novelty of the patented structure is admitted, as no anticipation is alleged. Utility cannot be denied by a defendant which admittedly infringes. But, while both novelty and utility are essential to a valid patent, they are not in themselves sufficient to constitute invention. There must be something more. Somewhere there must be disclosed an evidence of the inventive faculty, and where this is absent there is no valid patent. No matter how novel, no matter how useful, a device may be, without evidence that the designer has exhibited some degree of skill or ingenuity in contriving something new, which surpasses a showing of mechanical skill, are we permitted to say that he has invented something and hold a patent valid. In the absence of this element of invention, the patent, if issued, must be held invalid, no matter how novel or useful it may be. Thompson v. Boisselier, 114 U. S. 1, 13, 5 S. Ct. 1042, 29 L. Ed. 76.

[5] Fleming, in the patent in suit, has merely taken his own prior structure, that shown in patent No. 1,559,234, and placed a supporting and protecting skirt around the waste-receiving receptacle. This skirt performs no new function. Botty and Schulte show supporting skirts. Gardner shows a protecting skirt. The skirts of both Botty and Schulte would serve as protection without change in construction, if protection was needed. In making this adaptation, Fleming has modified the shape of his old waste-receiving receptacle; but this modification is not necessary, nor is it claimed as invention. The skirt now serving as a support for the standard, the size of the receptacle may, of course, be decreased, and its construction considerably simplified. I am satisfied that the change in the size and shape of the receptacle does not involve invention, particularly as Fleming made no claim to a receptacle of any particular size or shape. I am equally satisfied that the claims could not be saved by reading into them as a limitation the suggested use of a glass receptacle.

Gardner shows a construction admirably designed to protect fragile receptacles. Glass in use would perform no new function. The qualities which make it desirable are all old and well known. I therefore conclude that the changes over the prior art are merely manifestations of mechanical skill, and do not amount to invention. The claims in suit are held to be invalid.

[6] It appears that, upon learning of the probable issuance of the patent in suit, the defendant caused to be prepared two applications for letters patent—one in the name of George S. Murray, from whom it had purchased the rights to a stand he claimed to have invented; and the other in the name of Benjamin Munch, an officer of the defendant. Both applications disclosed structures approximating somewhat that of the patent in suit. Neither application was ever filed. Plaintiff argued from these facts that the defendant is estopped to deny validity. This does not follow, when the question of validity is at issue, as was pointed out by Judge Putnam in Osgood Dredge Co. v. Metropolitan Dredging Co. (C. C. A.) 75 F. 670. In that case it was held that, even though the defendant, by advertisements and other public declarations, had maintained the patentability of machines of the same general character as that which he was charged with infringing, such matters can have but little weight on the question of the validity of the patent. On page 673 the learned judge gave the reasons for the rule. He said:

"The complainant has pressed upon us advertisements and other public declarations of the respondent maintaining the patentability of dredgers of the general character of the one in issue. In that class of litigation in which results can affect no interests except those of the parties to it, the court may well give weight to declarations of that nature; but with reference to a patent for an invention, which is of public concern, such declarations are of little consequence, and neither the inventor nor the alleged infringer can be permitted to substitute his own acts or opinions for the judgment of the court. It is a thoroughly well settled principle of patent law that in clear cases the court may, of its own motion, adjudge a patent invalid, even if its invalidity is not set up by the alleged infringer. Much more would it refuse to be controlled by evidence of the kind which the complainant thus brings to our attention."

In addition to this rule of law, the differences between the disclosures of the patent

in suit and of these two applications, as matters of fact, are such as to negative any such conclusion regarding the claim made by plaintiff that defendant is estopped to deny validity.

### Trade-Mark Infringement and Unfair Competition.

[7] In addition to the claim for patent infringement, plaintiff charges defendant with an infringement of an alleged common-law trade-mark and with unfair competition. The phrase, or rather slogan, used by defendant, and of which plaintiff complains, is "Ashless Ashstand." Plaintiff's trade-mark is apparently "Smokador," and defendant's "Ashagon," and both parties use the qualifying phrase or slogan, "the Ashless Ashstand," or its equivalent, in connection with their trade-marks. Plaintiff was the first to adopt this slogan, and claims an exclusive right to its use as a suggestive mark. In my opinion, the phrase is purely descriptive, and not susceptible of technical trade-mark appropriation. Certainly its use by plaintiff and defendant has been as a descriptive modifying phrase used in connection with their respective trade-marks. In order to establish an exclusive right to use the phrase, plaintiff must show such use as will justify the conclusion that a secondary meaning has attached to it, signifying origin in the plaintiff. No such secondary meaning is shown here. The phrase being descriptive, and still open to public use, defendant's use will not be enjoined, unless unfair.

[8] Unfair competition is ordinarily found only where defendant is palming off its goods as those of plaintiff, either by deliberate representation or by advertisements and dress of goods so worded and arranged as to be likely to cause confusion in the trade. In order to succeed in any action for unfair competition, it must appear that deception will be the natural and probable result of defendant's acts. Turner & Seymour Manufacturing Co. v. A. & J. Manufacturing Co. (C. C. A.) 20 F.(2d) 298, 301. There is no evidence in the case at bar of confusion of any kind, nor of any likelihood of confusion. Defendant's advertising shows some similarity to plaintiff's in its general get-up and style, but no greater similarity than might be reasonably expected with such similar products. Certainly nothing has been shown which would justify an inference that defendant is attempting to profit at plaintiff's expense. No evidence of confusion in the trade has been offered, nor do I think that the common use by plaintiff and defendant of the slogan "Ashless Ashstand" is likely to cause confusion.

Let the bill be dismissed, with costs to the defendant.

Decree accordingly.