## ENSIGN CARBURETOR CO. v. ZENITH-DETROIT CORPORATION.

Circuit Court of Appeals, Second Circuit. December 9, 1929.

No. 50.

D. A. Usina, of New York City (George L. Wilkinson and Howard W. Hodgkins, both of Chicago, Ill., of counsel), for appellant.

Gifford & Scull, of New York City (Merrell E. Clark and Fish, Richardson & Neave, all of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge. ▮ This suit is for infringement of a patent granted to Ensign on August 26, 1924, on an application filed September 30, 1916, for a carburetor. The carburetor is used for mixing liquid fuel and air in proper proportions to provide combustible mixture for use in the engine cylinders. By the reciprocation of the piston cylinders, a stream of air is drawn through the carburetor and creates a suction. As the

stream passes through the carburetor, it picks up the necessary amount of liquid fuel to provide the air-fuel mixture desired. The carburetor of the appellant's patent provides fuel reservoirs for two different fuels. The upper reservoir is for gasoline, to be used only in starting, and the lower reservoir is for kerosene, which is intended to be used as the main fuel. At the bottom a reservoir is provided for water, which is added to the mixture when kerosene is used.

Appellant's carburetor has a down-flow jet, as distinguished from the up-flow jet, but operates on the same principle. The fuel level maintained within the reservoir is slightly below the top edge 65 of the tube 2. When the engine is stationary, there will be no fuel flow from the reservoir over the edge 65 of the tube 2, but when the engine is in operation, the suction produced by it in the vortex or mixing chamber reduces the pressure at the jet and in the suction tube. The result is the higher pressure on the surface of the fuel in the reservoir forces the fuel to flow through the openings 7 and passage 64, the tube 2, and the jets 2'' into the vortex chamber, where it is mixed with the air entering through the main inlet 22 to form the desired combustible mixture for the engine. This is illustrated on Fig. 1 of the drawings. The air-bleeding of the jet of appellant's patent is through the air opening or openings 26, shown in Fig. 1, which is connected through the normally closed valve 27 with the suction chamber. The valve is automatically actuated by the suction in the suction chamber. As the suction increases, and this is due to the increased engine speed, the valve 27 is automatically raised to permit air to enter through it into the suction chamber, thereby reducing the suction in that chamber and in the suction tube 2, and preventing the enriching of the air-fuel mixture which would otherwise result from the increased suction.

The novelty of the patent in suit resides in the interconnecting of the three air openings 22, 26, and 32, so as to maintain constant pressure relations between them, and therefore uniform air-fuel mixture, irrespective of any pressure changes that might be imposed by the main air inlet by the application to it of an air strainer. In a carburetor the rate of flow of fuel through the jet is dependent upon the pressure difference between the jet and the fuel reservoir, and therefore anything that changes the pressure at one of these points, without changing it correspondingly at the other will alter the rate of flow of the fuel, and alter the proportion of fuel to air in the mixture. If the main air inlet is restricted by placing over it an air strainer or in any other way, the pressure within the main air pipe inlet and at the jet will be reduced. If the fuel reservoir is maintained at atmospheric pressure through its air vent, there will be an increase in the fuel propelling pressure difference, and therefore the rate of fuel flow and the mixture will become richer. If air is fed under pressure to the air inlet as by a supercharger, the pressure at the jet will be increased, and the fuel propelling pressure difference decreased, thereby thinning the mixture.

These difficulties were appreciated in the art and had been overcome by the expedient of connecting the fuel reservoir vent to the main air inlet, or doing what is referred to as interconnecting or balancing the air openings of the carburetor. By the use of such balancing system, the fuel propelling pressure difference, and therefore the composition of the mixture, are maintained substantially constant, irrespective of changes of pressure imposed by the main air inlet. Different engine speeds and loads were found to interfere with the uniformity of the mixture; for increase in the engine suction increased the amount of fuel fed in proportion to the air, therefore enriching the mixture, and it became necessary to add more air to the mixture at high speeds.

This problem admittedly was solved before the patent in suit. First, as disclosed in the Krebs patent, No. 734,421, it was solved by supplying the mixing chamber at a point beyond the fuel jet, and gradually increasing the volume of air as the speed of the engine increased, thereby compensating for the increased supply of fuel; second, it was overcome by supplying air to the fuel before its delivery into the mixing chamber of the carburetor, so that the gradually increasing quantity of fuel would be compensated by mixing it with a correspondingly increasing volume of air, which is known as air-bleeding the fuel jet. The appellant adopted this air-bleeding arrangement in the design of the carburetor constructed under the patent in suit. The third solution was a compensating jet arrangement, which consists in combining with the gradually increasing delivery of fuel, a compensating stream of air and fuel which stream becomes leaner with the speed of the engine. See patent to Baverey, No. 908,953. This compensating jet arrangement is employed in the appellee's carburetor. Therefore the problem of compensating for the tendency of the carburetor to deliver a mixture of increasing richness as the speed

of the engine increased, had been successfully solved before the invention of the patent in suit.

In the appellant's patent, the liquid fuel reservoir has a vent opening to the atmosphere and is provided with a constant level device, which maintains the level in the reservoir and in the nozzle. The orifice or jet of the nozzle is slightly above the level in the reservoir. When the engine is idle, there will be no flow of fuel through the jet; but, when the motor is running, the suction produced by it draws air through the air inlet past the jet, and reduces the pressure at that jet below atmospheric. The pressure difference which is thus produced between the jet and the fuel reservoir causes the fuel to flow through the jet at a rate dependent upon the pressure difference and to mix with the air stream on the way to the cylinder. The appellant argues that the need of a clarifier which would strain the air, supply it to a carburetor, and protect it and the engine, and which would not produce an unbalanced condition in the carburetor, and thereby disturb the mixture ratio, with consequent inefficient results, presented a problem entirely different and independent from that previously presented by reason of the tendency of combustible mixture to become enriched as the demands of the engine increased; that it matters not how perfectly the carburetion maintained, the desired fuel ratio, by compensating for the tendency of the mixture to increase in richness with the speed of the engine, would be unbalanced when the air cleaner is applied to the intake. The argument proceeds that it was solved by the patentee by presenting the use of the air cleaner, and providing connections between the air intake, the float chamber, and the fuel jet, so as to impose upon the float chamber and the fuel jet pressures corresponding to the reduced pressure at the intake, due to the resistance of the cleaner, and, it is said, thereby maintaining the desired fuel ratio, not only after the cleaner was initially applied to the carburetor, but after, whether through usage and accumulation of foreign matters therein, the resistance becomes greater, and consequently the pressure in the carburetor intake becomes correspondingly further reduced.

Claims 1 and 8 are in suit. Claim 1 is typical and reads:

"In a carburetor having a float chamber, a fuel jet, and an air intake, a balancing means to maintain a pressure in the float chamber corresponding to that in the air intake of the carburetor, and means for directing an air supply from the balancing system of the float chamber to the fuel jet, whereby to maintain a proportionate amount of fuel to air without lowering the fuel velocity."

The patent in suit was granted only after a consideration of the principal prior patents which are now referred to as anticipations: Noyes, Nos. 979,788 and 993,097; British patent, No. 1217, of 1905, to Peloux; Stewart patent, No. 960,601. Having had this consideration before the patent issued, the usual presumption of validity which accompanies the grant is greatly reinforced. Smokador Mfg. Co., Inc., v. Tubular Products Co. (C. C. A.) 31 F.(2d) 255; Foster v. T. L. Smith Co. (C. C. A.) 244 F. 946.

There is a strong presumption that the claims allowed are valid. Hildreth v. Mastoras, 257 U. S. 27, 42 S. Ct. 20, 66 L. Ed. 112; MacClemmy v. Gilbert Corset Co. (D. C.) 221 F. 73. But an analysis of this prior art discloses the interconnection or balancing of the two air openings of a simple carburetor for the purpose of maintaining the fuel mixture constant, in spite of pressure change imposed upon the main air inlet, and the same was true of the three air openings of carburetors. The patent in suit discloses a three-air opening carburetor of the air-bleeding species, and the tube balancing system for interconnecting or balancing all of the air openings of the carburetor, whether or not the carburetor was adapted to compensate for the tendency of the mixture to become enriched with increase in engine speed.

The appellant admits that this balancing problem, whether applied to a three-air opening carburetor or to one of the air-bleed type was the same, and was solved in the same way; but it argues that its solution is new and of inventive thought. The Noyes patent disclosed with clearness the way to prevent interference with fuel mixture as a result of changing pressure at the major air opening of a carburetor by interconnecting all the air openings. Noyes' carburetor, as shown, illustrated but two air openings, the main air inlet and the opening in the top of the fuel reservoir. It would seem that the principle is the same, and the result is the same, whether there are two openings or three, as there are in the air-bleed carburetor. Noyes employed an air cleaner to the main air inlet of the carburetor, utilized directly the suction created by the motor by connecting his hose to the main air inlet of the carburetor, and interposed in the line, and in ad-

vance of the carburetor, a suitable strainer for separating the dust from the motor air current upon which it is borne. He speaks in his specifications of "to ultimately maintain fixed ratios of air and fuel in the combustion mixture." In the specifications of appellant's patent, the balancing system is said to be accomplished "by a balancing system in the form of air supply means, consisting of a tube connecting the air inlet with the air space above the fuel surface in the float chamber, so that the pressure on the surface of the fuel in float chamber is always equal to the pressure and velocity head of the air in the air intake." There is a difference, to be sure, because the patent in suit is the air-bleed opening type, and therefore is not the particular form of carburetor used by Noyes, employing three, instead of two, openings.

In the Peloux patent, there are three air openings, the conventional fuel reservoir vent, the main air inlet, and the additional air inlet to maintain correct carburetion, and which, like the carburetor of the patent in suit, has all three of these openings interconnected or balanced, so that changes in pressure at the main air inlet will be communicated to the two other openings, and will thus be rendered ineffective, so far as concerns the composition of the fuel mixture. The Peloux carburetor employs the Krebs expedient. For supplying air in the mixing chamber at a point beyond the fuel jet, it has holes which are described as "additional air inlets capable of regulation by hand or automatically, so as to obtain the best carburetion." It is the genus of the additional air inlet carburetor, both appellant's and appellee's carburetor. But the character of the pressure change at the main air inlet in Peloux was an increase in the pressure at that point, rather than a decrease in pressure, such as Noyes'. Peloux supplied under pressure to his main air inlet; Noyes recognized that a reduction in pressure at the main air inlet would, in the absence of balancing, result in an increase in the richness of mixture, and Peloux recognized that an increase in pressure at the main air inlet, in the absence of balancing, would decrease the richness of the mixture. But both interconnected or balanced their air openings.

Assuming there is a difference between balancing or interconnecting the several air openings in the Peloux, which was necessary because of increasing the pressure at the main air inlet instead of decreasing it, it is clear to us that the appellant's patent must be very much restricted or limited in its application. The claims must be limited strictly to air-bleed carburetors of the kind employed by the plaintiff, and particularly to the Pitot tube balancing means. This tube transmits velocity head, as well as pressure head, while Peloux does not.

The patent to Stewart, No. 960,601, discloses a form of three-air opening carburetor in which the three air openings are interconnected or balanced. The openings are the main air inlet, the fuel reservoir, and the additional air opening leading to the top of the well. The float maintains the liquid fuel in the reservoir at the desired constant level, and normally, when the engine is stationary, it will lie within the well at the same level; that well being provided with a tapering opening through which the fuel may flow into it from the reservoir. This patent was held not to anticipate by the Patent Office, on the theory that the appellant's balancing system maintains the same pressure at the main air inlet in the reservoir and at the jet, whereas Stewart maintains unequal pressure in order to effect the desired fuel feed. But at the trial it was shown that it was just as essential in the appellant's carburetor, as it was in Stewart's, that there be a pressure difference between the fuel reservoir and the fuel jet, for without such pressure difference there would be no fuel feed.

In view of what now must be accepted as Stewart's disclosure, the appellant's patent must be limited to the structure disclosed in his specifications. In Stewart's, the engine might run so fast that the well would not keep supplied with sufficient fuel to satisfy it, and to prevent this Stewart provided his third air opening. Passage 27 consists of an additional air opening to the carburetor, and it communicated with the main air inlet. The air vent 29 to the fuel reservoir is interconnected with the other two air openings. The effect of the vent 29, which is of small size, is to decrease somewhat the pressure difference which otherwise would be produced between the reservoir and the well. But it merely reduces it, and does not destroy it. Interconnection between these three openings will maintain a proper pressure relation between them, irrespective of any pressure charges imposed upon the main air inlet.

If there be invention in the patent in suit, it is of a very limited character. The appellee has not infringed in its carburetor, which is an up-flow type, and has no tendency to syphon, even if it had no third air opening of any kind. The appellee had no syphoning

688

problem to meet. It used a three-air opening carburetor, which it desired to balance, in order that it might apply it to an air cleaner or supercharger without affecting the mixture. It balanced it in the same way that both the two-air opening carburetor and the three-air opening carburetor had been previously balanced by interconnecting all the openings. In doing so, it has not embodied what the patentee accomplished when he filed a small slot in the plug in his 1911 carburetor, in order to cure its syphoning.

In appellant's air-bleed carburetor, the increase in the fuel feed through the main jet is prevented by bleeding air directly into that jet through the automatically operated valve; but in the appellee's structure there is no air bleed into the main jet, and no automatically operated valve, thus providing the appellant's compensating jet which interconnects with the well and has an air opening at the top. Into the bottom of this well liquid fuel flows from the fuel reservoir through the restricted orifice in a restricted amount, which, because the well is so freely opened at the top, is not materially affected by changes in suction at the compensating jet outlet. Increased engine suction, which increases the flow of air through the main air inlet, and increases still more the fuel flow through the main jet, does not increase the rate of fuel flow through the compensating jet; but, on the contrary, in view of the increase in air flow, the rate of fuel flow through the compensating jet is decreased relative to the air flow. In this way, the enriching tendency of the main jet is compensated for by the compensating jet, and the final mixture is maintained substantially constant, irrespective of increased suction due to increase in engine speed. Appellee's balancing system does not project into the main air inlet in such a way as to pick up and transmit velocity head as well as pressure head. Instead, the velocity of the air flow through the air inlet pipe actually decreases the pressure transmitted by the tube.

We are satisfied that the appellee's device is different, not only in respect to the carburetor structure itself, but with respect to the third air opening for maintaining correct carburetion at all engine speeds and with respect to the balancing system. They are alike only in that they have a third air opening and the balancing system interconnecting the third air openings. But these things are common also to prior carburetors. The appellee does not infringe.

Decree affirmed.