BUXTON INCORPORATED, a corporation,

and

United-Carr Fastener Corporation, a corporation, Plaintiffs,

v.

JULEN INCORPORATED, a corporation, Defendant.

United States District Court
S. D. New York.

July 10, 1963.

Emery, Whittemore, Sandoe & Graham, New York City, Nichol M. Sandoe and Hugo M. Wikstrom, New York City, of counsel, for plaintiffs.

Harry Price, New York City, for defendant.

McLEAN, District Judge.

This is an action for alleged contributory infringement of a patent. Defendant denies contributory infringement, at-

tacks the validity of plaintiffs' patent on the basis of certain specified prior patents, and counterclaims for alleged misuse of the patent by plaintiffs. Jurisdiction arises under the Patent Act of 1952 as amended (35 U.S.C. § 1 et seq.). Those facts which are undisputed are as follows:

The patent is No. 2,789,614 issued on April 23, 1957 upon an application filed on June 14, 1955. It is owned by plaintiff Buxton Incorporated ("Buxton"). Plaintiff United-Carr Fastener Corporation ("United-Carr") is Buxton's exclusive licensee.

The patent is a combination patent relating to "flap closures and their fasteners." The "flap closures" to which it relates are the closure flaps of flexible receptacles, such as purses, key cases, billfolds and the like. In essence, there are four elements to the patented combination: (1) a flap closing an opening substantially equal "in width to the length of said opening," which folds over the wall of the receptacle to close the opening; (2) a rigid bar, specified in claim 2 to be a "metal channel bar member coextensive in length" with the straight edge of the flap; (3) a post and socket snap fastener, the post being on the flap and the socket in which it engages being on the wall of the receptacle; and (4) a metal "extension," integral with the inner wall of the channel bar member, which carries the post element of the fastener on it. When one pulls on the flap to disengage the post from the socket and thus open the receptacle, this metal extension presses on the rim of the socket and operates as a part of a "second class lever system" to facilitate the disengaging. The advantage claimed for this combination is that it makes it possible to open the receptacle by grasping the flap at any point without "dog-earing" the ends of the flap or creasing it.

Plaintiff United-Carr manufactures metal parts or "findings" which go into this combination and sells them to manufacturers of the purses and the other receptacles. Defendant also manufactures metal findings and sells them to the manufacturers of receptacles. Defendant is thus a competitor of United-Carr.

The "finding" involved here is the metal channel bar member with its integral extension and post or stud, which I will refer to throughout as the "channel bar." To avoid the confusion arising from the parties' use of the words "width" and "length" to mean the same thing, I will refer to the dimension from one end of the channel bar to the other as its "width." Under the patent, the width of the channel bar is supposed to be substantially equal to the width of the flap to which it is attached. The flap in turn is substantially equal in width to the opening which it closes.

United-Carr has sublicensed four other manufacturers of findings to make, use and sell "flap fasteners [i. e., channel bars] adapted for use in the construction covered" by the patent. These license agreements relate to flap fasteners at least 1¹³⁄₁₆ inches in width. This is an arbitrary dimension, apparently selected on the theory that as a practical matter, it would be unlikely that a shorter channel bar would be used in a receptacle embodying the patented combination. In December 1958 United-Carr offered such a sublicense to defendant, but defendant did not accept it.

Before considering plaintiffs' charge of contributory infringement, I will deal with defendant's claims of invalidity and misuse of plaintiffs' patent. Defendant attacked the validity of the patent by amending its answer at the trial, following my ruling that its original pleading did not sufficiently raise that issue. The amendment was specific and limited in scope. The sole basis of the attack is that the patent is anticipated by three prior patents, a German patent No. 1,-676,103 dated February 13, 1954, and two United States patents, Nos. 1,765,052 and 1,765,053, each issued to Carr on June 17, 1930.

The German patent claims:

"Ball part of a snap button fastener preferably for leather goods,

characterized by the fact that it sits on a sheet metal piece of which part is bent around the edge of the leather and pressed against the leather and the other part of the sheet metal piece."

In the terminology used by the parties here, this patent relates to a post element of a snap fastener "sitting on" a metal channel member which is bent around the edge of a leather flap.

United States Patent No. 1,765,052 issued to Carr on June 17, 1930, and assigned by him to United-Carr, covers a one-piece fastener stud for securing a slip cover to a panel, such as an automobile door. Patent No. 1,765,053, also issued on June 17, 1930 to Carr and assigned by him to United-Carr, also covers a one-piece stud member for attachment to a part, such as an automobile door, to be covered by a slip cover.

In addition to these, defendant has referred in its brief, although not in its amended pleading, to United States Patent No. 2,630,851, issued to Rodgers on March 10, 1953. This patent, as well as the two Carr patents, was listed in the file history of the patent in suit, and was considered by the examiner. This is a patent on a brief bag of specified construction, having a flap, the edge of which is reinforced with a "stiffening strip," and provided with a flexible leaf spring to keep the flap upright when the bag is open.

None of these prior patents covers a combination. None relates to flap closures for receptacles such as purses or billfolds. At most, these patents cover or refer to items which conceivably could be an element of plaintiffs' patented combination. Thus, the German patent relates to the post element of a snap fastener on a metal channel member. The Carr patents relate to the stud element of a snap fastener. The Rodgers patent refers to a stiffened edge. It does not clearly appear, however, that the items described in these prior patents are in fact similar to the corresponding element of plaintiffs' combination. Thus, the description in the German patent of the "ball part of a snap button fastener" is too brief to permit the conclusion that this ball part is actually of the same construction as the channel bar which plaintiffs' combination includes. The stud member described in the Carr patents does not appear to be the same as the stud element in plaintiffs' combination. The stiffened edge of the flap in the Rodgers patent does not appear to be the same as the channel bar in plaintiffs' combination.

Plaintiffs' patent, of course, enjoys a statutory presumption of validity. 35 U.S.C. § 282. This presumption is reinforced as against patents which were considered and discarded by the Patent Office, as the two Carr patents and the Rodgers patent were. Ensign Carburetor Co. v. Zenith-Detroit Corp., 36 F.2d 684 (2d Cir. 1929).

The mere fact that the individual elements of the combination are not novel does not in itself invalidate the combination patent.

"A novel combination of old elements which cooperate with each other so as to produce a new and useful result is patentable." (Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 247 F.2d 343, 347 (2d Cir. 1957)).

To constitute an anticipation, the disclosures of prior art in prior patents must be clear and certain. Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 143 F.Supp. 429 (S.D.N.Y.1956); aff'd, 247 F.2d 343 (2d Cir. 1957), cert. denied, 355 U.S. 952, 78 S.Ct. 537, 2 L. Ed.2d 529 (1958); Trussell Manufacturing Co. v. Wilson-Jones Co., 50 F.2d 1027 (2d Cir. 1931).

In my opinion the prior patents relied upon by defendant fail to meet that test and are inadequate to overcome the presumption of validity in favor of plaintiffs' patent. I conclude, therefore, that the defense of invalidity has not been established.

In support of the claim that plaintiffs have misused their patent, defendant relies on U.M.A., Inc. v. Burdick Equip-

ment Co., Inc., 45 F.Supp. 755 (S.D.N.Y. 1942). Plaintiff there owned a patent on a method. It manufactured and sold apparatus to be used in practicing the method. Plaintiff considered that its customers had an implied license to use the patented method. Plaintiff did not offer licenses to other manufacturers of the apparatus. This court held that plaintiff could not maintain an action for infringement against another manufacturer of similar apparatus. It held that plaintiff had unlawfully attempted to extend its patent rights by in effect requiring anyone who wished to use the patented method to purchase the necessary unpatented apparatus from plaintiff.

I do not consider this 1942 decision to be controlling here. In the first place, the court in the U.M.A., Inc. case was careful to point out that it was not dealing with a patent on a combination. It apparently felt that the result would have been different if plaintiff had been the owner of a combination patent suing a manufacturer of an unpatented element of the combination for contributory infringement. That is, of course, precisely the situation here.

In the second place, plaintiff United-Carr, unlike the plaintiff in U.M.A., Inc., has licensed other manufacturers of the unpatented element and has offered such a license to this defendant.

■ Finally, and most important, the law of patent misuse in contributory infringement cases has undergone marked change since 1942. Following the decision in Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944), which has been characterized as "having obliterated the law of contributory infringement" (Aro Manufacturing Co. v. Convertible Top Replacement Co., 365 U.S. 336 at 348, n. 3, 81 S.Ct. 599, at 605, 5 L.Ed.2d 592 (1961)), Congress enacted 35 U.S.C. § 271(d) which provides:

"No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following: (1) derived revenue from acts which if performed by another without his consent would constitute contributory infringement of the patent; (2) licensed or authorized another to perform acts which if performed without his consent would constitute contributory infringement of the patent; (3) sought to enforce his patent rights against infringement or contributory infringement."

This statute seems to me to cover the present case. All that plaintiff United-Carr has done has been to (1) "derive revenue" by selling unpatented components of the combination with knowledge that they will be used by the manufacturer of the combination; and (2) licensed other manufacturers of the unpatented components to do so. The statute expressly provides that neither of these courses of conduct shall constitute misuse or shall afford a basis for denial of relief in an action for contributory infringement.

The statute was held to have that effect in Sola Electric Co. v. General Electric Co., 146 F.Supp. 625 (N.D.Ill.E.D.1956). See also: Stearns v. Tinker & Rasor, 252 F.2d 589 (9th Cir. 1957); Electric Pipe Line, Inc. v. Fluid Systems, Inc., 231 F.2d 370 at 372 (2d Cir. 1956).

I conclude, therefore, that plaintiffs have not misused their patent and have not attempted unduly to extend it. Accordingly, defendant has no valid defense on that ground and there is no valid basis for its counterclaim.

I turn now to the question of contributory infringement.

35 U.S.C. § 271(c) provides:

"Whoever sells a component of a patented machine, manufacture, combination or composition * * * constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable

for substantial noninfringing use, shall be liable as a contributory infringer."

The evidence establishes, and I so find, that a manufacturer of receptacles named Aristocrat Leather Goods ("Aristocrat"), has manufactured and marketed a billfold which directly infringes plaintiffs' patent. This billfold contains, as one of its elements, a channel bar which embodies the fundamental principle of the bar which is part of plaintiffs' combination, i. e., a bar the inner wall of which has an integral "extension" carrying the post or stud of the fastener. It is conceded, and I so find, that a certain quantity of these channel bars were manufactured by defendant and sold by it to Aristocrat. Precisely how many were so sold does not appear.

It is defendant's position, however, that it is not guilty of contributory infringement because (1) it did not know the channel bar to be "especially made or especially adapted for use in an infringement" of the patent, and (2) the channel bar is "a staple article or commodity of commerce suitable for substantial non-infringing use."

Based upon the uncontradicted evidence, I find that the defendant has been manufacturing channel bars of this construction, in various widths and shapes, since 1955. Defendant was first shown such a bar in 1954 by a customer who said that he had obtained it in Germany. In July 1956 defendant advertised in a trade publication various bars of this construction labeled "stud tabs," one of which was of the same width and design as that used upon the Aristocrat billfold.

Although plaintiffs' patent was issued on April 23, 1957, defendant's president testified that defendant did not know of its existence until May 19, 1958, when plaintiff United-Carr wrote to defendant charging it with contributory infringement. I accept this testimony as true.

There is authority to the effect that in order to be held for contributory infringement, a manufacturer of a component need not be aware of the fact that the article in which his customer embodies it is covered by another's patent which the article infringes. Freedman v. Friedman, 242 F.2d 364 (4th Cir. 1957).

I have difficulty in reconciling this decision with the language of Section 271 (c) which requires knowledge that the component is especially made or adapted "for use in an infringement of such patent." It is hard to see how a manufacturer can know that his component is adapted for use in infringing a patent if he does not know that there is a patent to be infringed. The evidence here is such, however, that I am not compelled to decide whether or not to follow the Freedman decision on this point.

At least, Section 271(c) requires that the defendant know that his component is to be used by his customer in a particular article, which article, whether defendant knows it or not, in fact infringes plaintiffs' patent. Freedman v. Friedman, supra. See also Elevator Appliance Co. v. Brooks, 101 F.2d 703 (2d Cir. 1939) decided before the enactment of the statute.

Defendant's position is that it does not know for what purpose its customers use the components which it sells, and that it makes no effort to find out. As defendant's vice president put it, "We do not delve or ask our customers what is going on." Defendant says that it makes up the part to the width and style specified by the customer and delivers it without further inquiry. Defendant says that this is not only its practice in general, but that in particular it was the practice which it followed in dealing with Aristocrat. It denies that it knew that Aristocrat was using channel bars purchased from defendant in a billfold which infringed plaintiffs' patent.

It is important to bear in mind that whether a purse or a billfold infringes or not depends, not merely on the construction of the channel bar which it employs, but on the entire combination. Among other things, the flap of the purse must be substantially as wide as the opening

and the channel bar must be substantially as wide as the flap. In support of its contention, defendant put in evidence a jewel box also made by Aristocrat and also employing the very same channel bar used on the offending billfold. The jewel box does not infringe plaintiffs' patent because the flap is nowhere as near as wide as the opening. Moreover, defendant proved that other channel bars which it manufactures, of the same construction but of a width different from that on the Aristocrat purse, have been used by its customers on purses and receptacles of one sort or another which do not infringe. Finally, the evidence shows that plaintiff United-Carr manufactures, among other findings, a channel bar of the width and shape similar to that on the Aristocrat purse, and that this bar is used by its customers on a variety of purses, some of which would infringe, but for plaintiff's implied license to its customers, and others of which would not. An official of United-Carr testified that United-Carr does not know on what type of receptacle its customers will use its channel bars.

As against this evidence, plaintiff proved only, in addition to the fact that defendant's channel bar was in fact used by Aristocrat on an infringing billfold, that defendant's officers had on occasion seen articles in stores which embodied channel bars of defendant's manufacture, and on some occasions had visited the plants of their customers and observed the manufacture of articles using defendant's parts. What the particular articles or parts were was never made clear. It was not shown specifically that defendant's officers had seen the particular Aristocrat purse, either at the Aristocrat factory or in a retail store.

■ In my opinion, the weight of the credible evidence on this issue is in favor of defendant. I find, therefore, that defendant did not know that the channel bar which it manufactured was being used by Aristocrat in the particular billfold which infringes plaintiffs' patent.

In view of this lack of the requisite knowledge, the case does not meet the standard set up by Section 271(c). Consequently, it is doubtless unnecessary to consider whether or not these channel bars are "staple articles or commodities of commerce suitable for substantial non-infringing use." I may say, however, that the evidence, such as it is, seems to me to preponderate in defendant's favor on this issue as well. Defendant proved that it has manufactured some twenty different sizes and shapes of channel bars of this construction. Some of them are considerably shorter than $1^{13}\!/_{16}$ inches. At least four of them are only $\frac{3}{4}$ of an inch in width. As we have seen, United-Carr itself, in its sublicense agreements, has apparently considered it unlikely that a bar shorter than $1^{13}\!/_{16}$ inches would be used on an infringing receptacle, presumably because it would be impracticable to construct a receptacle having an opening only $\frac{3}{4}$ of an inch wide. The question thus arises—what is the relevant commodity? "Is it channel bars of this construction in general, regardless of their particular width or shape, or is it only the particular channel bar used on this Aristocrat purse, a straight bar $2\frac{1}{8}$ inches in width?" If the former, it seems obvious that the commodity is "suitable for substantial non-infringing use." If the latter, it is still true, as previously pointed out, that bars of this identical width and shape have been used on receptacles which do not infringe.

The evidence is rather thin as to the extent of such use. Plaintiff indeed has suggested that the various purses illustrating this use which were introduced at the trial were made up specially for the occasion. But there is no evidence to support that assertion. If this were the critical point in the case, it would be appropriate to request further evidence before deciding it. This is unnecessary, however, in view of the conclusion which I have reached on the issue of defendant's knowledge.

■ I conclude that plaintiffs have failed to prove contributory infringement of their patent on the part of defendant and that therefore the complaint should be dismissed. I conclude that defendant

has failed to prove that plaintiffs have misused the patent and that accordingly, defendant's counterclaim should be dismissed.

Pursuant to Rule 52(a), this opinion constitutes the court's findings of fact and conclusions of law.

The Clerk is directed to enter judgment accordingly. So ordered.