## BELBER TRUNK & BAG CO. v. UNITED STATES.
### No. 16874.

District Court, E. D. Pennsylvania.
Jan. 26, 1933.

Chase Morsey, of St. Louis, Mo., and Milton H. Belber and Robert T. McCracken, both of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., and Edward W. Wells, U. S. Atty., both of Philadelphia, Pa., and Ralph E. Updike, Atty. in General Counsel's Office, and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, both of Washington, D. C., for the United States.

KIRKPATRICK, District Judge.

This is a suit to recover an alleged overpayment, amounting to $60,016.86, of income and excess profits taxes for the taxable year 1918. The tax was assessed and paid after the expiration of the statutory period of limitation, and the plaintiff bases its claim upon section 607 of the Revenue Act of 1928 (26 USCA § 2607), which provides that any tax assessed after such time shall be considered an overpayment.

The first defense is that the plaintiff by written agreement waived the limitation period, and the first question is as to the validity of the waivers. The second defense is that the plaintiff, subsequent to the assessment, gave bond to stay immediate collection of the tax by distraint, and the second question is whether the giving of the bond extinguished any right the plaintiff may have had at that time.

The facts are substantially as follows:

The plaintiff's return for the taxable year 1918 was filed on June 16, 1919. The period of limitation under the law at that time with-

in which the assessment could legally be made by the government expired at the end of five years or on June 16, 1924. Before that date the period was extended for another year, or to June 16, 1925, by what may be referred to as the first waiver, admittedly valid and effective.

The limitation period so extended expired without any new waiver having been filed and without any assessment having been made. Two months after its expiration on August 18, 1925, in response to a letter from the Commissioner of Internal Revenue, the plaintiff filed a second waiver extending the period to December 31, 1926. On January 13, 1926, in response to another letter from the Commissioner, the plaintiff filed a third waiver which by its terms also extended the period of limitation to December 31, 1926, the same date as fixed by the second waiver, already filed.

On December 18, 1926, and within the limitation period covered by the second and third waivers, the Commissioner assessed additional income and profits taxes and interest against the plaintiff for the year 1918 in the total amount of $84,467.27. $24,450.41 has been either abated or collected by means of credits and is not involved in this suit.

On April 20, 1927, the plaintiff, under threat of immediate proceedings to collect the balance or $60,016.86, gave bond to the collector and obtained an extension of the time for payment, agreeing to make payment in monthly installments of $5,000 each, which payments were duly made and the total amount paid on or before September 20, 1928.

In January, 1929, the plaintiff filed claims for refund, which claims were rejected in March, 1929. Thereupon this suit was brought.

The fact that the second waiver was given after the expiration of the statutory period (as extended by the first waiver) does not impair its validity. Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335. If obtained by duress or fraud, it would be void. The plaintiff does not suggest that there was any duress, but does contend that it was obtained by suggestions amounting to fraudulent misrepresentations contained in the Commissioner's letter of August 14, 1925, in reply to which it was sent. This contention calls for further findings of fact which I make as follows:

The letter of the Commissioner in response to which the second waiver was sent was as follows:

"Reference is made to your income and profits tax returns for the calendar years 1917 to 1919, inclusive."

"The appraisal submitted by you to establish the March 1, 1913, value of your plant for depreciation purposes is under consideration and it is not believed that the examination of the appraisal nor the audit of your returns will be completed prior to the statutory period of limitation. In the event the final audit of your returns discloses overassessments, in order to protect your interests it will be necessary that you immediately file claims for refund with the Collector of Internal Revenue for your district."

"In the event deficiencies in tax are disclosed in order that the interests of the Government may not be jeopardized you are requested to execute and return to this office within ten days from the date of this letter, the enclosed form of waivers."

When the plaintiff received this letter, it was engaged in a dispute with the government about its 1918 taxes. It had had an appraisement made of all its property with a view to showing its value as of March 1, 1913. In its brief the plaintiff says: "Plaintiff thought that this appraisement contained sufficient information to convince the Government that its contentions were correct that there was no additional tax due. The appraisement was so complete in every detail that as a matter of fact it was thought that there might be a refund coming to plaintiff on account of having overpaid its taxes for this year. This was the state of plaintiff's mind in August 1925."

There is no doubt that the second sentence of the Commissioner's letter strongly suggests that the statutory period of limitation had not expired when the letter was written, and it is not unlikely that the Commissioner knew that it had. But the plaintiff also knew it. Even if the president of the company, who signed the second waiver, was ignorant of the date of the filing of the return, he certainly knew that he had already filed the first waiver which extended the statutory period to June 16 1925, and no longer, because he himself had signed and sent it. He may have failed to keep a copy, and he may have forgotten all about it. That is quite a different thing, however, from saying that it was a fact of which he had no knowledge. A deliberate waiver cannot be invalidated by the party signing it because of fraudulent misrepresentations if the fact alleged to have been misrepresented was one of which he had full and accurate knowledge, and particularly where it related to the date of something which he himself did.

I therefore make the following finding of fact: The plaintiff's president, when he signed and sent the second waiver, knew that the period of limitation for the assessment of his 1918 taxes had expired.

In spite of the somewhat evasive character of his testimony on this point, I am inclined to think that the plaintiff's president was acting under legal advice when he filed the second waiver. At any rate he was at that time represented by counsel who were "filing additional protests to their assessments ✻ ✻ ✻ and asking for recomputation of ✻ ✻ ✻ tax." If, as the brief suggests, the plaintiff, advised by counsel, felt that there was a reasonable prospect of a refund, that might be a very good reason why it should wish to keep the controversy open rather than cut it short by standing upon its legal rights.

The conclusion reached as to the second waiver makes it unnecessary to consider the validity of the third waiver, but it may be pointed out that the letter in response to which the third waiver was given is entirely free from anything which might be called misleading. Assuming that the second waiver was valid (a matter entirely of law), the statement that "the statutory period within which the Commissioner may assess any additional taxes ✻ ✻ ✻ will expire presently" could scarcely have caused any prejudicial misunderstanding. The letter sets out quite fully four points in which the appraisal reports submitted by the taxpayer were believed by the Commissioner to be insufficient. I can find no misrepresented fact in it.

█ As to the bond—the second defense: When the bond was given, the Commissioner was in a position to proceed at once to collect the entire tax. Even assuming that such action would have been illegal, the taxpayer would have been compelled to pay and would have been relegated to an action at law. By filing the bond the taxpayer obtained an extension of time which enabled it to pay in installments. As was pointed out in McCaughn v. Philadelphia Barge Company (D. C.) 27 F.(2d) 628, 629: "However, as soon as the bond was executed, the taxpayer assumed a second and entirely distinct obligation, and became subject to a new and entirely different kind of liability. ✻ ✻ ✻ " In U. S. v. John Barth Company, 279 U. S. 370, 49 S. Ct. 366, 367, 73 L. Ed. 743, the Supreme Court said: "The making of the bond gives the United States a cause of action separate and distinct from an action to collect taxes which it already had. The statutes now pleaded to bar the suit cannot be extended by implication to a suit upon a subsequent and substituted contract. The postponement of the collection of the taxes returned was a waiver of the statutory limitation of five years that would have applied had the voluntary return of the taxpayer stood and no bond been given. ✻ ✻ ✻ To avoid the result usually ensuing from the return which he himself made, the taxpayer was permitted by a bond temporarily to postpone the collection and to substitute for his tax liability his contract under the bond."

This taxpayer, or its authorized agent, after the statutory period of limitation had expired, on three different occasions and by three different instruments, waived the bar of the statute, and it is not an unfair assumption from his testimony that he was advised by counsel throughout. The first waiver was filed at a time when he expected that by keeping the controversy alive it might result in an abatement of some of the tax liability disclosed by his return. The second waiver was made while the controversy was still in progress, but in the face of definite advices from the government that his showing so far was insufficient. The third waiver took the form of a bond by which he obtained an extension of time for payment. So far as this record discloses, the only reason upon which he could be entitled to a return of the sum asked is that it was assessed too late. In view of his successive waivers, I do not think that he is in a position to recover.

The facts stated in the foregoing opinion may be taken as special findings of fact, together with the facts stated in the defendant's requests, all of which are affirmed. The court denies the plaintiff's request for findings of fact and conclusions of law, and exceptions are allowed.

Judgment may be entered for the defendant.