**SCHICK DRY SHAVER, Inc., et al. v. DICTOGRAPH PRODUCTS CO., Inc.**

**No. 7870.**

District Court, E. D. New York.

Oct. 31, 1936.

Oscar W. Jeffery, Abraham Tulin, and Reginald Hicks, all of New York City (Cooper, Kerr & Dunham and George F. Des Marais, all of New York City, of counsel), for plaintiffs.

Watson, Bristol, Johnson & Leavenworth, of New York City (L. A. Watson, C. V. Johnson, and E. R. Helferich, all of New York City, of counsel), for defendant.

MOSCOWITZ, District Judge.

This is a suit for the infringement of claims 1 and 13 of patent No. 1,721,530 issued to Jacob Schick on July 23, 1929, and claim 5 of patent No. 1,757,978 issued to Jacob Schick on May 13, 1930.

The plaintiff Schick Dry Shaver, Inc., is a corporation organized and existing under the state of Delaware, and is the owner of the exclusive right to make, use, and sell, and to grant to others sublicenses to make, use, and sell in the United States of America, the inventions of the two patents in suit.

The plaintiff Schick Industries, Limited, is a corporation organized and existing under the laws of the Bahama Islands, and is the owner of the legal title to the patents in suit.

The plaintiff manufactures an electric razor, a dry shaver known as the Schick razor.

The defendant, Dictograph Products Company, Inc., is a corporation organized and existing under the laws of the state of Delaware, and has a regular and established place of business within this district.

The defendant's electric razor, a dry shaver, is known as the Packard Lektro Shaver.

Claims 1 and 13 of Schick patent, No. 1,721,530, read as follows:

"1. A shaving implement comprising a shearing plate of extreme thinness to rest against the skin, having an opening for the reception of hair, a cutter to travel across the opening to provide a shear cut with one edge of the opening, and means for holding the parts to insure the supporting of the plate against flexing by means of the cutter."

"13. A shaving implement comprising a shear-plate with slots extending from side to side, a cutter under the plate and having teeth to co-operate with the edges of the slots in cutting, and means for operating the cutter transversely of the slots."

Claim 5 of Schick patent, No. 1,757,978, reads as follows: "5. A shaving machine comprising a shaving head channel-shaped in cross section and slotted and sharpened on its closed side to form shearing edges, and a cutter channel shaped in cross-section and slotted on its closed side and slidable in the head whereby the slotted ends co-operate to cut hair entering the slots of the shaving head."

The defendant has interposed defenses of invalidity and noninfringement.

The general idea of manufacturing a dry shaver was in itself not new. Prior to the invention of patent No. 1,721,530 attempts had been made in the United States, England and France to manufacture dry shavers. Those efforts, however, were without result. The first attempt to manufacture dry shavers was made about 1900, as is shown in the Drosse patent, No. 664,388, issued December 25, 1900. Nothing effective was done until the invention by Col. Jacob Schick of the patent No. 1,721,530.

The subject of plaintiff's patent No. 1,721,530 is a mechanical dry shaver, a device by means of which the hair can be quickly, readily, and efficiently removed from the face and other parts of the body without the use of soap lathers or creams. The device shown in this patent is an effective dry shaver which may be used without an unpleasant or disagreeable effect. The Schick device described in this patent is new, novel, and useful, and it can be well understood that in all probability this device will revolutionize the manner and method of shaving.

The plaintiff Schick Dry Shaver, Inc. has manufactured and sold dry shavers since 1931. Its gross sales have been approximately $6,000,000. It has had a large commercial success. When the plaintiff's razor first appeared on the market, the public was skeptical of its use. No doubt many still are. The fact that 500,000 are in daily use indicates its success. It is not only used by the public, but is prescribed by physicians for sufferers from skin diseases.

No other dry shaver appeared on the market until December, 1935, at which time defendant's device was sold under the name of Packard Lifetime Lektro-Shaver, manufactured by the defendant, Dictograph Products Company, Inc., for Lektro-Shave Corporation, and distributed by the Progress Corporation.

The Packard shaver is claimed to be manufactured under patent No. 1,970,518, issued to A. Harry Aaron on August 14, 1934. Mr. Aaron is vice president of Dictograph Products Company, Inc., and is president and fifty per cent. owner of the Lektro-Shave Corporation, and vice president of the Progress Corporation. Aaron's ideas concerning a dry shaver were not original. All of his information on the subject was obtained in the home of one Hanley, in New Jersey, on the occasion of a visit which Schick paid to Hanley and in the course of which Schick fully explained his shaver to Hanley in Aaron's presence.

The plaintiff's patent No. 1,721,530 is concerned primarily with the head of the shaver and consists, in general, in the provision of a thin shear plate traversed by a plurality of open-ended slots; beneath the shear plate is an inner cutter, likewise traversed by slots. In combination with

these elements, means are provided for rapidly reciprocating the inner cutter transversely of the shear plate slots, so that the cutter teeth (formed by the slots in the inner member) effect a shearing action with the nether edges of the slots in the shear plate. No moving part touches the skin. This combination is set forth in claim 13 in suit. In the preferred form of the device, the shear plate and inner cutter are so organized that, if the thin shear plate should flex, it would be supported by the inner member. This additional feature is specified in claim 1 in suit. The head of the device which actually does the work of shaving consists, first, in the provision of a thin shear plate to bear against the face. This plate is a few thousandths of an inch thick, and is provided with shearing edges underneath, against which the hair is cut as nearly flush with the surface of the skin as is possible. The cutting is performed by the teeth of an inner cutter which bears against the back of the shear plate and travels back and forth across shearing edges.

The plaintiff claims that patent No. 1,-757,978 is an improvement over patent No. 1,721,530, in that it provides for the ready escape from the shaver of the cut hair, to the end of avoiding clogging of the device and of facilitating cleaning it. Plaintiff further contends that it consists, in general, of the construction of both the shear plate member and the inner cutter member in channel form, the inner member fitting inside the outer, leaving a clear passage through the center of the head into which the cut hairs pass and from which they are readily expelled as is shown in claim 5.

Defendant has set up the following patents, and claims they anticipate the inventions of the patents in suit or deprive them of invention: The patent to H. Drosse, No. 664,388, issued December 25, 1900; the patent to G. L. Roux, No. 847,609, issued March 19, 1907; the patent to L. Brunacci, No. 911,472, issued February 2, 1909; the patent to K. Kawàlle, No. 1,543,387, issued June 23, 1925; the patent to R. W. Gregson, No. 1,730,004, issued October 1, 1929; the patent to M. B. & L. B. Stearns, No. 1,158,741, issued November 2, 1915; the patent to M. B. & L. B. Stearns, No. 1,-205,576, issued November 21, 1916; the patent to M. Andis, No. 1,671,265, issued May 29, 1928; the patent to C. I. Matson, No. 1,210,340, issued December 26, 1916; the patent to W. A. Fusch, No. 1,350,717,

issued August 24, 1920; and the British patent to G. P. Appleyard, No. 753, issued July 10, 1913. Defendant claims that the Appleyard patent is its best reference. That is readily understood, as the other patents do not in any manner affect the patent No. 1,721,530.

The patent to Drosse, No. 664,388, is the earliest dry shaver patent of those introduced in evidence by the defendant. Drosse refers to his dry shaver as a shaving apparatus, and states that safety is insured by the fact that its action does not depend on the moving effect of a blade, but rather on a kind of shearing action between the two cutting edges. However, Drosse states that the blade is laid firmly against the skin. This would indicate that Drosse's shaving apparatus may cut the skin.

Drosse and Roux both contemplate the use of a constantly rotating cutter member of helical form. It can likewise be said that Brunacci, Kawalle, and Gregson are quite the same generally as Drosse and Roux, as each employs a constantly rotating cutter member, mounted in a cylindrical or part-cylindrical housing, and asserted to cut the hair against the edges of one or more holes in the housing.

All of the patents with the exception of Brunacci resemble the Aaron device, in that they contain a worm device and show and describe a housing having a hole or holes in them. The Aaron device was rejected by the American Safety Razor Company and others as of no value.

The Stearns patents, Nos. 1,158,741 and 1,205,576, and the patent to Andis, No. 1,671,265, lack the thin shear plate with open-ended slots extending across it. They, therefore, have no inner or movable cutter to co-operate with any such shear plate and slots.

Matson and Fusch are very much like Drosse. Matson shows a rotary cutter. Fusch shows a single, central knife-blade type of cutter designed to be scraped back and forth across the slit. Neither of them has a reciprocated cutter co-operating with open-ended shear plate slots.

All of these patents are valueless as dry shavers and were not acceptable to the public. While commercial success cannot create invention and make a patent valid, it is an element to be considered by the court.

Plaintiff's patent, No. 1,721,530, gave rise to a new art—the art of dry shaving.

None of the prior patents set up by the defendant in any manner anticipate patent No. 1,721,530, nor do any of these patents qualify or in any manner effect claims 1 and 13 of this patent.

The only difference between the Packard and the Schick razor is that the Packard is round-headed instead of square and has a rocking motion of the cutter. This latter feature apparently is without merit.

█ Nathan, the defendant's expert, was unable to state whether the rocking motion had any particular significance. It is quite immaterial whether the rocking motion has any useful purpose, as at best it is a theoretical improvement. A theoretical improvement is of no importance on the question of infringement. Temco Electric Motor Company v. Apco Manufacturing Company, 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298; Cochrane v. Deener, 94 U. S. 780, 787, 24 L.Ed. 139; Cantrell v. Wallick, 117 U.S. 689, 694, 6 S.Ct. 970, 29 L.Ed. 1017.

█ There is no real difference between plaintiff's device and defendant's device. Defendant's device has a thin shear plate. The shear plate has the open-ended slots extending from side to side; there is a co-operating inner cutter, likewise slotted, mounted beneath the shear plate and adapted to be moved transversely of the shear plate slots. The conclusion is inescapable that defendant's device infringes the claims 1 and 13 of patent No. 1,721,530.

█ Great reliance is placed by the defendant upon Appleyard. This patent was considered by the Patent Office on the applications for both Schick patents. This re-enforces the presumption of validity. Ensign Carburetor Co. v. Zenith-Detroit Corp. (C.C.A.) 36 F.(2d) 684, 686; Smokador Mfg. Co. v. Tubular Products Co. (C.C.A.) 31 F.(2d) 255, 257.

█ A patent or publication alleged to be an anticipation must be in and of itself a full and complete disclosure of the invention of the patent in suit without any assistance from that patent. As has been said, "A patent relied upon as an anticipation must itself speak." Skelly Oil Co. v. Universal Oil Products Co. (C.C.A.) 31 F.(2d) 427, 431.

█ Appleyard describes his patent as relating to a shaving or hair cutting appliance which has for its chief object to construct an appliance which will cut the hair to the level or surface of the skin without injury and without the employment of soap or other preparations. Appleyard's provisional specification contains the following statements:

"According to this invention the shaving or cutting appliance comprises a fixed and a movable cutter, or a number thereof with their cutting edges so placed as to move in contact with the surface of the skin, in combination with a comb or fence so disposed in relation to the fixed and movable cutter or cutters as to prevent the skin from being injured by the cutting edges when the latter are moved relatively to each other.

"The fixed and movable cutters may be self adjusting or be arranged to receive adjustment relatively to each other and the movable cutter may be reciprocated in an endwise direction, or be rotated or oscillated, either manually, or by a mechanical, or electrical motor which may form part of the apparatus or be connected therewith by a flexible driving shaft. The comb or fence may also be arranged to receive adjustment relatively to the cutters and be formed with transverse recesses arranged to direct the hair between the teeth of the comb.

"In one arrangement the movable cutter may comprise a bar formed with two sets of spaced cutting teeth, one set being separated from the other by a slot formed longitudinally in the bar for the reception of a fixed comb or fence secured to a frame between which and the comb the movable cutter is reciprocated in an endwise direction. The teeth of the comb or fence may comprise two or more rows of pins, or a row of wire staples, having their crowns working in contact with the skin, or the comb teeth may be formed in a piece with the back or body of the comb by slotting the material of which the comb is composed in a transverse direction, and in this case the surfaces of the comb teeth that come in contact with the skin may be notched or serrated to direct the hair between the teeth of the comb. The adjacent surfaces of the cutter and comb teeth may work in contact or be separated slightly from each other. The stationary cutters may be fixed to the aforesaid frame outside the movable cutter, their cutting edges projecting inwardly and terminating in a knife edge against the inner surface of which the cutting edges of the teeth on the movable cutter work. The cutting edges of the fixed cutters are formed by

finely serrating their knife edge. These serrations may be formed by cutting a number of shallow grooves across the width of the inwardly projecting portions previously referred to. These serrations are crossed by the teeth of the movable cutter in the same manner that is effected in the ordinary hair clipper and the ends of the finely serrated teeth may extend to the adjacent edges of the movable cutter teeth.

"To allow the cut hair to escape apertures may be formed in the walls or supporting portions of the stationary cutters and the adjacent surfaces of such walls and of the movable cutter teeth are advantageously separated slightly from each other to prevent wedging or cutting of the hair between such parts. Screw or spring adjustment applied to the stationary or movable cutters may be employed for retaining their cutting edges in contact and for taking up wear.

"An endwise reciprocating motion may be imparted to the movable cutter by means of an eccentric engaging with a slot which may be formed transversely across the back of the cutter bar, and such eccentric may project from the end of a shaft rotatably mounted in the frame which carries the comb or fence, the fixed and movable cutters.

"The movable cutter may be operated by hand by means of one or more racks gearing with a pinion on the aforesaid shaft and provided with handles or fingers that are normally separated from each other by spring pressure.

"The movable cutter may also be operated by an electric or other motor in the manner already described.

"In some cases the stationary cutter or cutters may be interposed between the movable cutters, and in other cases a single movable cutter and a single stationary cutter may be employed, the advantage of the double arrangement residing in the fact that one or other set of cutters meets the hair in the contrary direction to that in which it is growing without reversing the appliance.

"In the two examples last mentioned the teeth of the movable cutter may be extended in advance of the teeth of the stationary cutter to constitute a comb or fence a portion of which together with the stationary cutter work in contact with the surface of the skin.

"Any appropriate mechanism may be employed for imparting movement to the single movable cutter, such for example as that which is employed in the ordinary hand hair clipper, or if desired it may be actuated by a motor in the manner already mentioned."

This specification seems a catchall and makes a number of suggestions which do not indicate how they can be carried out. This does not constitute anticipation. In re Fisher (Cust. & Pat.App.) 37 F.(2d) 628, 632.

Appleyard's provisional specification is a complete disclosure of the feature of nesting inner and outer cutters provided with an internal passage for escape of cut hairs. Appleyard discloses the method of dispensing with cut hair as follows: "To allow the cut hair to escape apertures may be formed in the walls or supporting portions of the stationary cutters and the adjacent surfaces of such walls and of the movable cutter teeth are advantageously separated slightly from each other to prevent wedging or cutting of the hair between such parts."

The application for patent No. 1,757,-978 as originally filed contained the following language: "5. A shaving machine comprising a casing, a U-shaped shear-plate on the end of the casing, a U-shaped cutter on the inside of the plate, the plate and cutter being slotted to form teeth for shearing, the cutter forming an open-ended passage for hair that has been cut."

Claim 5 of this patent contains the following language: "5. A shaving machine comprising a shaving head channel-shaped in cross section and slotted and sharpened on its closed side to form shearing edges, and a cutter channel shaped in cross-section and slotted on its closed side and slidable in the head whereby the slotted ends co-operate to cut hair entering the slots of the shaving head."

Claim 5 of the application provided for two U-shaped members, and specified that they were slotted to form teeth for shearing, but there was no limitation as to where the slots were. This claim was rejected and claim 5 of the patent substituted in its place. The location of the transverse slots in the channel members is a limitation of the claim which cannot be disregarded.

Claim 5 of patent No. 1,757,978 is limited to inner and outer cutters both channel-shaped in cross-section and both slot-

ted across the closed end of the channel. This limitation was required by the prior art and was concurred in by Schick before the Patent Office.

Mr. Nathan, defendant's expert, states that it is simple to provide egress channels for débris in all kinds of cutting instruments, including dry shavers, as shown in the patents to Drosse, Matson, and Appleyard.

Defendant's device does not infringe claim 5 of patent No. 1,757,978, and does not have channel-shaped cutters, and particularly does not have channel-shaped cutters which are slotted across the closed side. In so far as defendant's cutters resemble a channel, they are slotted at the open side.

The Appleyard patent discloses a shaving device with U-shaped cutters slotted at the open side. If claim 5 were entitled to an interpretation such as to read on the cutter construction of the defendant's device, then the claim would read equally well on the Appleyard disclosure.

The plaintiff's patent, No. 1,721,530, is valid and claims 1 and 13 are infringed.

It is not necessary to determine the validity of claim 5 of patent No. 1,757,978 in view of the disposition made that claim 5 is not infringed by the defendant's device.

Certain of plaintiffs' and defendant's proposed findings have been adopted in this opinion. If this opinion is not regarded as a sufficient compliance with rule 70½ of the Equity Rules (28 U.S.C.A. following section 723), requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.

Settle findings and decree on notice.